IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

STEPHANIE L. H., o/b/o S.L.H., a minor, )
                                                                           )
      Plaintiff,                                )
                                                                           )
vs.                                                                          )      Case No. 20-CV-579-JFJ
                                                                          )
KILOLO KIJAKAZI,[1]                          )
Acting Commissioner of Social Security,  )
                                                                          )
      Defendant.                            )

**OPINION AND ORDER**

Plaintiff Stephanie L. H. ("Plaintiff"), on behalf of the minor child, S.L.H. ("Claimant"), seeks judicial review of the decision of the Commissioner of the Social Security Administration finding that Claimant is not disabled. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

A child under the age of 18 is "disabled" under the Social Security Act if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A physical or mental impairment is an impairment "that results from anatomical, physiological, or

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Social Security regulations implement a three-step sequential process to evaluate a child's claim for supplemental security income benefits under Title XVI of the Social Security Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At step two, the ALJ determines whether the child has a "severe" medically determinable impairment. 20 C.F.R. § 416.924(c). A child is not disabled within the meaning of the Social Security Act if she is engaged in substantial gainful activity, does not have a medically determinable impairment, or has a medically determinable impairment that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(a)-(c).

At step three, the ALJ determines whether the child has an impairment, or combination of impairments, that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). 20 C.F.R. § 416.924(d). A child "meets" a listing if her impairment satisfies all the medical criteria set forth in a particular listing. 20 C.F.R. § 416.925(d). A child's impairment is "medically equivalent" to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). If the child's impairment does not meet or medically equal a listing, the ALJ then determines whether the child's impairment results in limitations that "functionally equal" a listing. 20 C.F.R. § 416.926a. In making this determination, the ALJ evaluates how the child functions in six domains: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To "functionally equal" a listing, the child's impairment must result in "marked" limitations in two domains of functioning, or an "extreme"

limitation in one domain.[2] 20 C.F.R. § 416.926a(a), (d). A child with an impairment that meets, medically equals, or functionally equals a listing, and that also satisfies the twelve-month duration requirement, is disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.924(d)(1).

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff applied for Title XVI supplemental security income benefits on Claimant's behalf on September 6, 2018, alleging Claimant became disabled on August 1, 2018, at the age of eight. R. 145-163. Plaintiff alleged Claimant was disabled due to oppositional defiant disorder, attention deficit hyperactivity disorder ("ADHD"), sensory processing disorder, and anxiety. R. 170.

---

[2] A "marked" limitation seriously interferes with a child's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate but less than extreme." *Id.* An "extreme" limitation very seriously interferes with a child's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is "more than marked," but it "does not necessarily mean a total lack or loss of ability to function." *Id.*

Plaintiff's claim for benefits was denied initially and on reconsideration, and she requested a hearing. R. 53-72, 89-91. ALJ Christopher Hunt conducted an administrative hearing and issued a decision on January 24, 2020, finding Claimant not disabled at step three, because her impairments did not meet, medically equal, or functionally equal a listing. R. 15-24, 30-52. The Appeals Council denied review, and Plaintiff appealed. R. 1-6; ECF No. 2.

In his written decision, the ALJ found that Claimant was a school-age child on the application date of September 6, 2018, and on the date of his decision.[3] R. 16. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. *Id.* At step two, the ALJ found that Claimant had the following severe impairments: oppositional defiant disorder, ADHD, and sensory processing disorder. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. R. 16-17. The ALJ then addressed the six functional equivalence domains, finding Claimant had: (1) a "marked" limitation in the domain of interacting and relating with others; (2) a "less than marked" limitation in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being; and (3) no limitation in the domains of moving about and manipulating objects and caring for herself. R. 18-23. Because Claimant did not have either a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain of functioning, the ALJ determined Claimant's impairments did not functionally equal a listed impairment. R. 17-23. Accordingly, the ALJ concluded that Claimant was not disabled. R. 23-24.

### III.   Issues

Plaintiff asserts that the ALJ erred in determining whether Claimant's impairments functionally equaled a listing. Specifically, Plaintiff argues the ALJ failed to support his findings

---

[3] A school-age child is defined as "age 6 to attainment of age 12." 20 C.F.R. § 416.926a(g)(2)(iv).

4

with substantial evidence in the functional domains of: (1) attending and completing tasks, and (2) interacting and relating with others. ECF No. 18.

IV.    **Analysis**

    A.    **Attending and Completing Tasks**

In the domain of attending and completing tasks, the ALJ considers how well a child can focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and how easily she changes activities. 20 C.F.R. § 416.926a(h). By the time a child reaches school age, she should be able to: (1) focus her attention in a variety of situations in order to follow directions, remember and organize her school materials, and complete classroom and homework assignments; (2) concentrate on details and not make careless mistakes in her work; (3) change activities or routines without distracting herself or others, and stay on task and in place when appropriate; (4) sustain her attention well enough to participate in group sports, read by herself, and complete family chores; and (5) complete a transition task without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

In his written decision, the ALJ determined that the record supported a less than marked limitation under this domain. R. 22. In making this determination, the ALJ noted Claimant's ADHD, oppositional defiant disorder, and mood disorder diagnoses as evidenced by a 2015 neuropsychological evaluation and Dr. Peteryne Miller's treatment notes. R. 21. As support for his less than marked limitation in this domain, the ALJ found Claimant benefitted from medication and specifically noted the following: (1) Dr. Miller's January 3, 2019, treatment note, wherein he observed Claimant made good eye contact, was attentive, and had intact memory, and he discontinued Claimant's antipsychotic medication due to weight gain; (2) Dr. Miller's January 31, 2019, treatment note wherein Claimant's grandmother reported increased hyperactivity and disorganized thoughts, and Dr. Miller observed Claimant was distractible, inattentive, fidgety, and

5

hyperactive; and (3) Dr. Miller's March 4, 2019, treatment note indicating Claimant had resumed her antipsychotic medication, Claimant's mother thought she was doing well, and mental status examination findings that Claimant was calm, cooperative, and made good eye contract. R. 21-22. The ALJ further found Claimant benefitted from the removal of distractions, noting: (1) Claimant was served part time in a special education classroom for math and reading; and (2) after Claimant began homeschooling, her mother reported Claimant did better when things that overwhelmed her, such as the dogs, were put away. R. 22. The ALJ then balanced these findings by taking note of the reports that Claimant was "quite talkative" and discussed unrelated topics when doing her work. *Id.* Finally, the ALJ noted that despite reports of trouble focusing, Claimant's mother reported Claimant was doing better in online school. *Id.*

Plaintiff argues the ALJ failed to account for longitudinal evidence reflecting Claimant's difficulties with "distractibility, attention, concentration, hyperactivity, persistence, focus, inconsistency, motivation, and following directions," and impermissibly ignored evidence supporting a marked limitation under this domain. ECF No. 18 at 7-8. Plaintiff specifically points to a 2015 neuropsychological evaluation, Dr. Miller's treatment notes from October 2016 through May 2018, occupational therapy notes from June 2015 through August 2016, and occupational therapy evaluations in July 2015, July 2016, and March 2018. *Id*. at 8. It is well-settled that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) (cleaned up).

6

As an initial matter, the Court notes much of the evidence Plaintiff cites precedes the alleged onset date by two years or more, rendering it less probative regarding Claimant's impairments as of the alleged onset date of August 1, 2018. Nonetheless, the ALJ specifically considered Dr. Miller's treatment notes prior to the alleged onset date and the 2015 neuropsychological evaluation as part of his analysis under this domain. R. 21-22 (citing Ex. 1F and 3F). The ALJ's opinion also reflects that he considered Claimant's occupational therapy notes and evaluations as part of his paragraph B analysis at step three. R. 16-17 (citing Ex. 4F, 5F, and 7F). For example, in making the closely related paragraph B criteria finding that Claimant was moderately limited in her ability to concentrate, persist, or maintain pace, the ALJ referenced the March 2018 occupational therapy evaluation, which is the most current occupational therapy evaluation in the record. R. 17 (citing Ex. 7F).

To the extent Plaintiff asserts the ALJ failed to consider Dr. Miller's treatment notes from the relevant period, this is also belied by the record. As part of his analysis under the functional domain of attending and completing tasks, the ALJ specifically discussed Dr. Miller's January 2019 and March 2019 treatment notes; Claimant's propensity for talkativeness; her ADHD diagnosis and difficulty paying attention and concentrating; and her restless and anxious behavior. R. 21-22. Although the ALJ did not explicitly discuss Dr. Miller's October 2018, June 2019, and September 2019 treatment notes in his analysis of this domain, he was not required to do so. *See Clifton*, 79 F.3d at 1009-10 ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Rather than "picking and choosing" the evidence that was favorable to his position, the ALJ in this case appropriately considered all the evidence, including the evidence Plaintiff asserts the ALJ ignored. Because Plaintiff points to no evidence the ALJ overlooked, her argument amounts to a request that the Court reweigh the evidence, which it cannot do. *See Oldham v. Astrue,* 509 F.3d 1254, 1257-58

(10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up). Accordingly, the ALJ's conclusion that Claimant has a less than marked limitation in the functional domain of attending and completing tasks is supported by substantial evidence.

      B.      **Interacting and Relating with Others**

The domain of interacting and relating with others considers how well a child can initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). A school-age child should: (1) be able to develop more lasting friendships with children her own age; (2) begin to understand how to work in groups to create projects and solve problems; (3) have an increasing ability to understand another's point of view and to tolerate differences; (4) be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

The ALJ found Claimant had a marked limitation in the functional domain of interacting and relating with others.[4] The ALJ acknowledged Claimant's tendency to anger quickly, her physical and verbal aggression towards others, her disruptive behavior in the general classroom when highly frustrated, her need for small group instruction due to her frustration level and

---

[4] In a summary of his findings at the outset of his functional equivalence analysis, the ALJ indicated Claimant had a "less than marked" limitation in the functional domain of interacting and relating with others. R. 18. However, the ALJ found Claimant had a "marked" limitation in interacting and relating with others when analyzing her limitations later in his decision. R. 19-20. Plaintiff asserts the ALJ's initial, summarized finding of a less than marked limitation in this functional domain was a scrivener's error. ECF No. 18 at 5. The Commissioner does not directly respond to Plaintiff's assertion, but nonetheless agrees the ALJ concluded Claimant had a marked limitation in interacting and relating with others. ECF No. 21 at 13. For purposes of this analysis, the Court accepts Plaintiff's position.

distractibility, her impulsive behavior, and her history of stealing from her grandmother. R. 19-20. The ALJ then contrasted this evidence with other evidence of record showing Claimant spent most of her day in a regular classroom during second grade, reported missing her friends after she began homeschooling, and was less belligerent and less aggressive when taking her antipsychotic medication. *Id*.

Plaintiff asserts the ALJ ignored the longitudinal evidence of Claimant's "longstanding and socially problematic behaviors," and should have found an extreme limitation in this domain. ECF No. 18 at 10-11. Plaintiff first points to a behavior assessment completed by Claimant's special education teacher on August 31, 2018. R. 235-40. In the assessment, Claimant's teacher reported Claimant "has been known to slap or hit teachers," and that she disrupted the classroom daily with behaviors such as making noises, talking to herself, throwing items, fidgeting, making vulgar gestures, and using vulgar language. R. 235-36. Although the ALJ did not specifically discuss the behavior assessment, he did discuss other evidence demonstrating Claimant's physical and verbal aggression towards others, disruptive classroom behavior, displacement of frustration to inanimate objects, use of vulgar language, impulsivity, and hyperactivity. R. 19-20. Because the behavior assessment does not reflect any significant changes in Claimant's social behaviors, it is cumulative of other evidence the ALJ discussed and not significantly probative. As such, the behavior assessment does not constitute evidence the ALJ was required to discuss. *See, e.g., Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (finding no error where the ALJ failed to discuss therapy records which were cumulative of undisputed evidence that the claimant had "serious long-term mental health limitations that clearly impact her life"). Furthermore, the ALJ clearly considered the behavior assessment since Plaintiff's counsel read the portion identifying Claimant's antisocial classroom behavior into the record at the administrative hearing. R. 43.

9

Plaintiff next points to evidence preceding the alleged onset date–including Dr. Miller's treatment notes from October 2016 through June 2018, the 2015 neuropsychological evaluation, occupational therapy notes from August 2014 and July 2016 through September 2016, the March 2018 occupational therapy evaluation, and a February 2018 treatment note from Claimant's primary care physician. Contrary to Plaintiff's assertion, the ALJ did discuss Dr. Miller's treatment notes prior to the alleged onset date as part of his analysis under this domain. R. 20 (citing Ex. 1F). As to the 2015 neuropsychological evaluation and the occupational therapy evidence, the ALJ considered such evidence when he found Claimant had a marked limitation in interacting with others for purposes of the paragraph B analysis earlier in his decision. R. 17 (citing Ex. 2F, 3F, 4F, and 7F). Regarding Claimant's primary care provider's February 2018 treatment note, such evidence is not significantly probative for the same reasons the behavior assessment was found not significantly probative above. Thus, the ALJ properly considered the evidence preceding the alleged onset date that Plaintiff cites as support for her assertion that the ALJ's determination under this domain is not supported by substantial evidence.

Plaintiff's assertion that the ALJ ignored Dr. Miller's treatment notes from the relevant period is likewise unpersuasive. The ALJ specifically referenced most, but not all, of Dr. Miller's treatment notes as part of his analysis under this domain. R. 20 (citing Ex. 2F at 4, 10, 16, 22; 1F at 46-47). The ALJ did not err by failing to specifically discuss Dr. Miller's March 2019 and June 2019 treatment notes because his decision clearly reflects that he considered this evidence in reaching his decision. R. 17 (citing Ex. 2F at 13, 19), R. 20 (citing Ex. 2F). Moreover, the ALJ thoroughly noted all of Claimant's antisocial behavior in his analysis of this domain, as discussed above. The ALJ's conclusion that Claimant has only a marked limitation in the functional domain of interacting and relating with others is, therefore, supported by substantial evidence. Plaintiff's

10

arguments to the contrary again ask the Court to reweigh the evidence, which is not permitted. *See Oldham,* 509 F.3d at 1257-58.

## V. Conclusion

For the foregoing reasons, the ALJ's decision finding Claimant not disabled is **AFFIRMED.**

**SO ORDERED** this 29th day of March, 2022.

_____
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT